662 P.2d 1125

In the Matter of the 1979 VALUATION OF PARCEL NO. R2348750330 OF Stanley D. CROW and Donna F. Crow, Appellants.

In the Matter of the Appeal of Stanley D. CROW and Donna F. Crow from the Board of Equalization of Ada County for the Tax Year 1979.

Stanley D. CROW and Donna F. Crow, Appellants,

v.

The BOARD OF EQUALIZATION and the Board of Ada County Commissioners, Respondents.

No. 13990.

Supreme Court of Idaho.

April 20, 1983.

Stanley Crow, Boise, for appellants.

Greg H. Bower, Scott L. Campbell and David W. Ball (argued), Boise, for respondents.

BISTLINE, Judge.

This is an appeal from a judgment in two matters which were consolidated in the district court, upon appeals by the appellants herein, Stanley and Donna Crow (hereinafter "Taxpayers"), to the district court from the Board of Ada County Commissioners and the Board of Equalization of Ada County. The basic facts in this case are as follows.

The Taxpayers are individuals, husband and wife, who are residents of Ada County. The property in question is improved real estate upon which the Taxpayers' home is located.

The Ada County Assessor assessed the entire property, both house and land, for the year 1978 at a market value for assess-

ment purposes of $60,000. At the time the property was appraised for the year 1978, the Taxpayers' home was under construction; the $60,000 valuation was an appraisal which took into account the fact that the Taxpayers' home was at that time a partially completed structure.[1] Construction of the home was completed during 1978. Thereafter, the Ada County Assessor assessed the property for the 1979 tax year at a market value for assessment purposes of $163,300, including $12,000 for the land and $151,300 for the Taxpayers' home.

The proceedings in this matter began on June 26, 1979, when the Taxpayers timely filed a written protest of the 1979 assessment of their property with the Board of Ada County Commissioners, sitting as a board of equalization, requesting that the market value of their property for assessment purposes be lowered to $60,000. A similar request was made by the Taxpayers in a July 5, 1979, petition to the Board of Ada County Commissioners. Both the protest and the petition were based upon the then applicable version of I.C. § 63–923(2),[2] which the Taxpayers contend limits the market value of the property for assessment purposes for the 1979 year to the 1978 market value for assessment purposes, with an adjustment for inflation limited to two percent. On July 5, 1979, the Board of Ada County Commissioners, sitting as a board of equalization, denied the Taxpayers' protest, and on July 16, 1979, the Board of Ada County Commissioners denied the Taxpayers' petition.

The Taxpayers appealed the Commissioners' July 16 denial of their petition to the district court, and at the same time the Taxpayers appealed to the Idaho Board of Tax Appeals from the July 5 denial of their protest. The Board of Tax Appeals affirmed the denial of the protest, and the Taxpayers appealed that decision to the district court. Thereafter, the two cases were consolidated in the district court.

On January 24, 1980, the parties through counsel entered into a stipulation of facts. Based on that stipulation, the parties cross-moved for summary judgment. On May 15, 1980, the district court granted Ada County's motion, and affirmed the determinations of the Idaho Board of Tax Appeals and the Ada County Commissioners.

On June 4, 1980, the Taxpayers offered to prove certain facts regarding rules and regulations of the Idaho State Tax Commission. That offer of proof was effectively replaced by a volume of rules and regulations which was later submitted by stipulation to the district court and constituted all of the rules and regulations that were possibly material to this action. Upon the Taxpayers' motion, the district court ordered a rehearing, limited to the question of what impact, if any, certain rules and regulations of the Tax Commission would have on the court's decision. On November 6, 1980, the district court reaffirmed its May 14, 1980, decision denying the Taxpayers relief. A notice of appeal was thereafter timely filed.

■ The primary issue before this Court is whether, under the applicable version of I.C. § 63–923(2), the Ada County Assessor was precluded from reappraising the Taxpayers' property in 1979. We hold that I.C.

---

1. The propriety of the 1978 assessment is not at issue in this case. However, the valuation of the property for assessment purposes was governed by Article 202 of the Rules and Regulations of the Idaho State Tax Commission, which provided that "[u]nder the market value for assessment purposes concept, the cost approach is applicable to ... dwellings ...." Article 202 further provided:

"In the application of the cost approach to improvements, the Idaho State Tax Commission suggests the unit-in-place cost new.

This method uses the in-place costs *new* of material after adding labor costs, architect fees, overhead and other items incident to the erection of the structure, using workable units such as square feet or cubic feet."

2. I.C. § 63–923 has been amended several times since the commencement of this action. Unless otherwise noted, all references in this opinion to I.C. § 63–923 are to the version of the statute applicable to the facts of this case.

§ 63–923(2) did not preclude reappraisal of the Taxpayers' property and, therefore, affirm the decision of the district court upholding the legality of Ada County's assessment for the 1979 tax year.

I.C. § 63–923 began as a 1979 codification by the legislature of Initiative Petition No. 1, as adopted by the electorate at the general election of November 7, 1978. Section 2 of Petition No. 1 provided:

"1. The actual market value shall be determined by the County Assessor but where real property is concerned it shall be the actual use of the real property. The actual market value means the County Assessors valuation of property subject to taxation as shown on the 1978 tax Assessment under 'market value', or thereafter, the appraised value of property subject to taxation when purchased, newly constructed, or a change in ownership has occurred after the 1978 assessment. All taxable property which has not already been assessed up to the 1978 levels may be reassessed to reflect that valuation.

"2. The actual market value base may reflect from year to year the inflationary rate not to exceed two percent (2%) for any given year or reduction as shown in the consumer price index or comparable data for the area under taxing jurisdiction."

Before Initiative Petition No. 1 was adopted it was reviewed by Idaho Attorney General Wayne L. Kidwell, who issued Opinion No. 78–37, concluding that Section 2 of the initiative discriminated in an unconstitutional manner, "because a parcel of property which had been purchased, newly constructed or subjected to a change in ownership will be placed on the tax rolls at a value higher than that of a similar parcel which has not experienced one of these circumstances." The Attorney General offered the following recommendation:

"The only sensible and certain safeguard is that of deleting the distinction made in Section Two of the initiative between property purchased, newly constructed or subjected to change of ownership on the one hand and property which has not experienced any of these circumstances on the other hand." [3]

The legislature codified section 2 of the initiative as I.C. § 63–923(2), with the changes as shown:

"1. *(2)(a)* The ~~actual~~ market value *for assessment purposes of real and personal property subject to appraisal by the county assessor* shall be determined by the ~~C~~*c*ounty ~~A~~*a*ssessor *according to the rules and regulations prescribed by the state tax commission, as provided in section 63–202, Idaho Code,* but where real property is concerned it shall be the actual *and functional* use of the real property. ~~The actual market value means the County Assessors valuation of property subject to taxation as shown on the 1978 tax Assessment under 'market value', or thereafter, the appraised value of property subject to taxation when purchased, newly constructed, or a change in ownership has occurred after the 1978 assessment.~~ All taxable property which has not ~~already~~ been ~~assessed up to the~~ *appraised at* 1978 *market value* levels ~~may~~ *shall* be ~~reassessed~~ *reappraised or indexed* to reflect that valuation *for the tax year commencing January 1, 1980. All property placed on the assessment roll for the first time after 1978, and all property which is reappraised after 1978, shall be appraised or indexed to reflect 1978 market value levels.*

"2. *(b)* The ~~actual~~ *1978* market values *for assessment purposes of real and personal property shall be adjusted* ~~base may reflect~~ from year to year *to reflect* the inflationary rate *but at a rate* not to exceed two percent (2%) for any given year ~~or reduction~~ as shown in the consumer price index or comparable data for the area under taxing jurisdiction." 1979 Idaho Sess.Laws ch. 18, § 1 p. 24 (*New material.* ~~Deleted material.~~).

---

3. Relevant portions of Attorney General Opinion No. 78–37 are set forth in the Appendix.

The changes shown above were made effective retroactively to January 1, 1979. Thus, I.C. § 63–923(2), as set forth above, was the version applicable to the 1979 tax year and the version which determines the propriety of the Ada County Assessor's 1979 reappraisal of the Taxpayers' property.

The Taxpayers argue that I.C. § 63–923(2) precluded reappraisal in 1979 of property that had been appraised in 1978. They assume that the two percent limitation in I.C. § 63–923(2)(b) "prevented re-appraisals (beyond the two percent (2%) adjustment) of property which increased in value for reasons such as zoning changes, location, nearby development, etc.," and argue that the legislature's deletion of the language expressly referring to appraisal of property which had been newly constructed or which had experienced a change of ownership,[4] demonstrates that the legislature intended to preclude reappraisal in such cases also. Thus, the Taxpayers ask this Court to conclude that their property was incorrectly assessed in 1979 by Ada County at a market value for assessment purposes of $163,300; they contend that the 1979 market value of their property for assessment purposes should have been determined to be the 1978 market value for assessment purposes of $60,000, plus two percent thereof, for a total of not more than $61,200.

We cannot accept the interpretation of I.C. § 63–923(2) offered by the Taxpayers. It is not supported by the language of the statute, it is contrary to the statutes and regulations governing *ad valorem* taxation, and it would result in the statute being unconstitutional.

I.C. § 63–923(2) provided in part:

"*All taxable property which has not been appraised at 1978 market value levels shall be reappraised* or indexed to reflect that valuation for the tax year commencing January 1, 1980. All property placed on the assessment roll for the first time after 1978, *and all property which is reappraised after 1978,* shall be appraised or indexed to reflect 1978 market value levels." (Emphasis added.)

The plain language of I.C. § 63–923(2) clearly demonstrates that the legislature did not intend to preclude reappraisals. Furthermore, we believe that the legislature's references in I.C. § 63–923(2) to "1978 market value levels" demonstrated its intent to establish 1978 as a benchmark year, thereby providing a standard by which property could be uniformly valued.

The Taxpayers argue that the language of the original initiative petition contemplated reappraisal of property which had been newly constructed. Subdivision 1 of section 2 of the initiative provided that "actual market value means ... the appraised value of property subject to taxation when purchased, newly constructed, or a change in ownership has occurred after the 1978 assessment." The Taxpayers argue that by deleting this language, the legislature intended to preclude reappraisals. We cannot agree for two reasons.

First, the language of subdivision 1 of section 2 of the initiative provided definitions for the phrase "actual market value." Actual market value was defined generally to mean "the County Assessors valuation of property ... as shown on the 1978 tax Assessment under 'market value'," but if the property were newly constructed or a change of ownership had occurred, actual market value was defined as "the appraised value of property." There was nothing in subdivision 1 pertaining to the valuation programs which were necessary to implement the above definitions. Valuations programs were governed by an entirely different provision, I.C. § 63–221, which required the county assessor of each county "to conduct and carry out a continuing pro-

---

4. The initiative provided in part: "The actual market value means the County Assessors valuation of property subject to taxation as shown on the 1978 tax Assessment under 'market value', or thereafter, the appraised value of property subject to taxation when purchased, newly constructed, or a change of ownership has occurred after the 1978 assessment."

gram of valuation of all properties under his jurisdiction ...." 1969 Idaho Sess. Laws ch. 455, § 10, p. 1217. In enacting I.C. § 63–923(2)(a), the legislature deleted the definitions of value for assessment purposes which appeared in the initiative, and provided an alternate method for determining value for assessment purposes. In doing so, the legislature removed the distinction that existed in the initiative between property which had been newly constructed or which had experienced a change of ownership and property which had not been subject to such a circumstance, and provided a single method for determining market value for assessment purposes—requiring that the market value for assessment purposes of all property be based upon 1978 market value levels. There was nothing in the language chosen by the legislature pertaining to the valuation programs necessary to implement its definition of market value for assessment purposes. Valuation programs continued to be governed by I.C. § 63–221, which continued to require a "continuing program of valuation." 1979 Idaho Sess.Laws ch. 18, § 3, p. 26. (A similar requirement still exists under I.C. § 63–221.) Thus, by deleting the language of the initiative which had defined the value for assessment purposes of property which had been newly constructed or which had experienced a change of ownership and substituting an alternate method of determining the value of such property, we do not believe that the legislature expressed an intent to preclude reappraisals after 1978 of such property.

The second, and most obvious, reason for this conclusion is that the language of I.C. § 63–923(2)(a) clearly contemplated that reappraisals would occur. The language chosen by the legislature simply required that when such reappraisals were made, the property was to be valued for assessment purposes at 1978 market value levels.

The Taxpayers also argue that the use of the word "levels" in I.C. § 63–923(2) did not demonstrate an intent by the legislature to establish 1978 as a benchmark year. Their argument is based upon their contention that the word "levels" was not added by the legislature, but was contained in the original initiative petition.

The word "levels" did appear in section 2 of the initiative, but it appeared only once and was used in a different context than it was used in I.C. § 63–923(2). Section 2 provided that "actual market value" was to mean "the County Assessors valuation of property subject to taxation as shown on the 1978 tax Assessment under 'market value,'" but that taxable property which "ha[d] not already been assessed up to the 1978 levels" could be reassessed to reflect that valuation. The purpose of this language was clearly to prevent an assessor from being bound by the 1978 assessment of property, if that assessment had not been brought up to date. Thus, a property whose turn in the reappraisal program had not come up in a while, could be reappraised at 1978 values, notwithstanding its 1978 assessment at, for example, 1975 values. A similar provision was found in I.C. § 63–923(2)(a): "All taxable property which has not been appraised at 1978 market value levels shall be reappraised or indexed to reflect that valuation for the tax year commencing January 1, 1980." The Taxpayers agree that the preceding phrase allowed property which had not in 1978 been appraised at 1978 market value levels, to be reappraised after 1978 to reflect such levels. However, the Taxpayers do not adequately explain why the final clause of I.C. § 63–923(2)(a) should be interpreted any differently.

The Taxpayers basically ignore the final clause of I.C. § 63–923(2)(a), which provided that "all property which is reappraised after 1978, shall be appraised or indexed to reflect 1978 market value levels." The reference to "market value levels" in that provision was added by the legislature, no similar reference existing in the original initiative petition. We believe this provision was added by the legislature to avoid the prob-

lem foreseen in Attorney General Opinion No. 78–37—that property which was reappraised and which "ha[d] been purchased, newly constructed or subject to a change of ownership [would] be placed on the tax rolls at a value higher than that of a similar parcel which ha[d] not experienced one of these circumstances." In Opinion No. 78–37, the Attorney General explained that a higher valuation would occur because the new appraisal would be made "based on then existing values—i.e., *not limited* to inflation exceeding two percent." (Emphasis in original.) This problem was avoided by the legislature by its addition of the language in I.C. § 63–923(2)(a) requiring that reappraisals be based upon 1978 market value levels.

Four groups of property existed under I.C. § 63–923(2)(a): (1) property assessed and appraised at 1978 market value levels; (2) property assessed in 1978, but appraised at, for example, 1976 levels; (3) property placed on the assessment roll after 1978; and (4) property reappraised after 1978. Under our reading of the statute, uniform valuation of property in each group could occur—the market value of all property to be determined at 1978 market value levels under I.C. § 63–923(2)(a), with a two percent per year allowance to account for inflation pursuant to I.C. § 63–923(2)(b).

In seeking to have I.C. § 63–923(2) interpreted to preclude reappraisal of newly constructed property in 1979, the Taxpayers ignore the requirement that was contained in I.C. § 63–923(2)(a), that market value for assessment purposes be the "actual and functional use" of the property.[5] Certainly

the actual and functional use of a partially completed structure would not be the same as that of the same structure when construction had been completed. I.C. § 63–923(2)(a) required such a difference in the actual and functional use be reflected in the property's market value for assessment purposes. However, if we accept the Taxpayer's argument that reappraisals of newly constructed property were not permitted under I.C. § 63–923(2)(a), then clearly the market value for assessment purposes would not necessarily reflect the property's actual and functional use as is required by the statute. We decline to read such an inconsistency into I.C. § 63–923(2)(a) when none exists.

The Taxpayers also argue that the language of I.C. § 63–923(2)(b) demonstrates that the legislature intended "that reappraisals be limited to adjustments for inflation not exceeding two percent (2%)." They suggest that a contrary interpretation would constitute an abrogation of the two percent limitation contained therein. We do not agree. I.C. § 63–923(2)(b) provided that "[t]he 1978 market values for assessment purposes ... shall be adjusted from year to year to reflect the inflationary rate but at a rate not to exceed two percent (2%) for any given year ...." The limitation contained in this provision limited the adjustment which could be made to account for *the inflationary rate* when market values for assessment purposes were determined; there was nothing in the provision pertaining to adjustments in value for reasons other than inflation. Moreover, the language in I.C. § 63–923(2)(a) expressly contemplated that reappraisals would occur.

---

**5.** We note that the phrase "actual and functional use" may be inconsistent in view of the fact that often a property's actual use may be different than its functional use. For example, property in an area that has previously been zoned residential, but which is "upzoned," may actually continue to be used as a residence. However, its functional use may be of greater value as a result of the zoning change. In such cases, "as long as such property is continuously used by the owner thereof solely for residential purposes," the property is to be appraised

as if it were in an area zoned residential, *i.e.,* according to its actual use. I.C. § 63–105D (Supp.1982) (added 1979 Idaho Sess.Laws ch. 273, § 1, pp. 709–10, retroactive to January 1, 1979).

There being no issues in this case relevant to the distinction between a property's actual use and its functional use, it is not necessary for this Court to consider at this time the possible inconsistency in the phrase "actual and functional use."

Thus, we cannot agree with the Taxpayers' contention that by enacting I.C. § 63–923(2)(b) the legislature intended to preclude reappraisals. Rather, we believe that I.C. § 63–923(2)(b) was enacted to prevent property values from escalating at the rapid rate of inflation, and thus that the two percent limitation was applicable only to the adjustment to be made for the rate of inflation. In so reading the statute, we do not abrogate the two percent limitation, we merely give effect to the intention of the legislature as it is plainly set forth.

Our reading of I.C. § 63–923(2) also gives effect to other statutes and regulations applicable to *ad valorem* taxation. At the time relevant to this case, I.C. § 63–221 provided:

"63–221. COUNTY VALUATION PROGRAM TO BE CARRIED ON BY ASSESSOR. (1) It shall be the duty of the county assessor of each county in the state to conduct and carry out a *continuing program of valuation of all properties under his jurisdiction* pursuant to such rules and regulations as the state tax commission may prescribe, to the end that all parcels of property under the assessor's jurisdiction are appraised at 1978 market value for assessment purposes for use during tax year 1980, and are maintained at such levels for tax years thereafter by being reappraised or indexed to reflect an inflationary rate, as provided in section 63–923, Idaho Code." 1979 Idaho Sess.Laws ch. 18, § 3 (emphasis added).

Article 221 of the Rules and Regulations of the Idaho State Tax Commission was pro-

mulgated to implement this statute. That article also required a continuing valuation program and provided in part:

"ART. 221. COUNTY VALUATION PROGRAM TO BE CARRIED ON BY ASSESSOR.

"Each county assessor shall formulate, plan, budget for, conduct and carry out a continuing valuation program of all properties under his jurisdiction. The valuation level for the 1980 tax rolls shall be as of December 31, 1978. (base year)"

I.C. § 63–202 authorized the state tax commission to prepare "rules and regulations prescribing and directing the manner in which market value for assessment purposes is to be determined for the purpose of taxation." The Tax Commission's regulation, Article 202, sets forth the methods for determining market value for assessment purposes.[6] Furthermore, Article 201 provided:

"ART. 201. PROPERTY ASSESSABLE IN COUNTY.

"The county assessor must appraise and convert to assessed value all property in his county except that expressly exempt by law.

"If the assessor is in doubt, he should appraise and assess the property, give proper notification to the taxpayer, and thus discharge his responsibility. The proof of exemption becomes the responsibility of the taxpayer, not the assessor."

The willful or knowing omission by a county assessor to assess any property at its proper value constituted a misdemeanor. I.C. § 63–214.

"ART. 111. MARKET VALUE DEFINED.
"The terms "value," "cash value," "full cash value," "true value" and "true cash value" are no longer applicable as terms defining value to be used for ad valorem tax purposes.
"The term "market value for assessment purposes" is to be considered the statute term for estimating property value.
"In the process of appraisal the term 'market value for assessment purposes' is the identification of the estimate of value sought."

---

**6.** The article occasionally refers to "market value" rather than "market value for assessment purposes," but I.C. § 63–111 provided at that time, that "[f]or purposes of appraisal, assessment and taxation of property in title 63, Idaho Code, the terms 'value,' 'cash value,' 'full cash value,' 'true value,' and 'true cash value' shall mean 'market value for assessment purposes,' as defined by rules and regulations of the state tax commission." 1979 Idaho Sess.Laws ch. 18, § 7, p. 28. Article 111 of the Tax Commission's Rules and Regulations similarly provided:

The Taxpayers argue that the regulations of the Tax Commission were not amended to take into account the two percent limitation set forth in I.C. § 63–923(2)(b), and that as a result, they work an abrogation of the limitation. This argument is based on the Taxpayers' contention that under I.C. § 63–923(2)(b) reappraisals are limited to "adjustments for inflation not exceeding two percent." The Taxpayers' argument fails for two reasons. First, as noted above, the language of I.C. § 63–923(2)(b) does not preclude reappraisals, but merely limits the adjustment that can be made in the 1978 market values for assessment purposes to account for the inflationary rate. Second, no amendment of the regulations pertaining to valuation was necessary. Under I.C. § 63–923(2)(b), the adjustment for inflation is made *after* there has been an initial determination of the 1978 market value for assessment purposes. Thus, under the statute, consideration of the two percent limitation would not have entered into the county assessor's determination of a property's 1978 market value for assessment purposes and consequently there was no need to modify the existing regulations.

 Finally, we note that the Taxpayers' interpretation of I.C. § 63–923(2)—that the statute precludes reappraisals other than to allow an adjustment of two percent for inflation—must be rejected because it would result in the statute being unconstitutional. It is a well-established rule of law that a statute must be construed, if possible, so as to achieve a constitutional result. *Scandrett v. Shoshone County,* 63 Idaho 46, 116 P.2d 225 (1941).

Article VII, section 2 of the Idaho Constitution, provides in relevant part that "[t]he legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that each person or corporation shall pay a tax in proportion to the value of his, her or its property . . . ." Article VII, § 5 provides further:

"All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property . . . ."

In order to effectuate the policy embodied in the above constitutional provisions, "the valuation of taxable property for assessment purposes must reasonably approximate the fair market value of the property." *Merris v. Ada County,* 100 Idaho 59, 63, 593 P.2d 394, 398 (1979).

Under the Taxpayers' interpretation of the statute, in 1979 two properties with equivalent value could be taxed at different rates. A property upon which construction was completed prior to 1978 would be assessed at a much higher value than a property with an equivalent value in 1979, but upon which construction was completed in 1978, a clear violation of the constitutionally mandated policy of fair and uniform taxation. This was persuasively illustrated in Ada County's brief:

"[A]ssume Blackacre is worth $60,000 in 1978 and Greenacre is worth $30,000 in that same year. In 1979, Greenacre undergoes new construction that increases its value to $60,000. Assuming *arguendo* that the Crows are correct, Greenacre may not be reappraissed in 1979, as it was already appraised in 1978, and is frozen at that appraisal, despite the new construction. In 1979, Blackacre, worth $60,000, will pay $600 in tax, plus 2%. Greenacre, also worth $60,000, will pay $300 in tax, plus 2%. A more extreme example will further highlight the unfair and illegal treatment resulting from the Crows' argument. Assume Greenacre was bare land in 1978, and had a house constructed upon that bare land in 1979. Under the Crows' view, Ada County cannot reappraise the property in 1979, if that bare land was appraised in 1978. The entire house could thereby escape taxation.

"The Crows, who argue and accuse at great length that Ada County is violating

the requirement of uniform taxation, urge an interpretation that, of necessity, falls into that very same trap. To paraphrase Walt Kelly, 'They have met the enemy, and it is themselves.' The inevitable, undeniable result of their argument is unfair and blatantly illegal taxation, in light of the requirement of uniformity. Article VII, Section 5, *Idaho Constitution.*" Respondent's Brief, pp. 15–16.

In this case, fair and uniform taxation results if I.C. § 63–923(2) is read as it is written—to allow reappraisals of property with valuations based on 1978 market value levels. Such a result could not be achieved if the statute were read, as the Taxpayers suggest, to preclude reappraisals, thereby freezing property values for assessment purposes at their 1978 values, with a two percent adjustment for inflation. Therefore, the Taxpayers' interpretation of the statute must be rejected.

As this Court noted in *Merris, supra,* 100 Idaho at 64, 593 P.2d at 399:

"In a challenge to the assessor's valuation of property, 'the value of property for purposes of taxation as determined by the assessor is presumed to be correct; and the burden of proof is upon the taxpayer to show by clear and convincing evidence that he is entitled to the relief claimed.' *Board of County Comm'rs of Ada County v. Sears, Roebuck & Co.,* 74 Idaho 39, 46–47, 256 P.2d 526, 530 (1953)."

In this case, the Taxpayers have not met their burden of proof; there is no evidence in the record that the assessor did not assess their property at its 1978 market value level, plus two percent. Therefore, the decision of the district court, upholding the County's assessment of the Taxpayers' property is *affirmed.* Costs to respondents.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in the result.

### APPENDIX

Attorney General Opinion No. 78–37

"QUESTIONS PRESENTED:

. . . .

"4. Does Section Two of the initiative allow a parcel of property which has been sold to be placed on the tax rolls at a value higher than that of a similar piece of property that has not been sold? If so, does the provision comply with the provisions of the Idaho Constitution that requires uniform treatment of property within the same class.

"5. Under the initiative proposal, what circumstances, other than those set forth in Section Two, paragraph one, permit a change in property values from the established 1978 base level? Does the initiative or any other provision of State law offer a guideline in the determination of any maximum change permitted? Is the increase in the value of all property in a county's tax base limited to the inflation rate not to exceed two percent; or is the increase in value for each piece of property that is not purchased, newly constructed, or subject to a change of ownership limited to the change in the inflation rate not to exceed two percent; or is all property limited to 1978 assessment levels unless the property is purchased, newly constructed or subject to a change in the inflation rate not to exceed two percent; or is some other interpretation suggested?

. . . .

"ANALYSIS:

. . . .

"4 and 5. *Reappraisal and the Two Percent Inflation Limitation.*

"It is helpful for purposes of analysis to condense and rearrange the order of the many issues posed by questions numbered four and five. This is so due to the interrelationships among sub-questions.

"Under the initiative, only the circumstances set forth in Section Two, subsection one and the two percent inflation rate provided for in Section Two, subsection two permit a change in property values from the established 1978 base level. With reference to the alternative interpretations of

Section Two of the initiative listed in Question Five, the interpretation which is the most likely to be adopted given the words utilized and entire context of the initiative (and the most commonly mentioned in public discussion) follows:

Under Section Two of the one percent property tax initiative, the increase or decrease of the 1978 base value for each parcel of property that is not purchased, newly constructed, or subjected to a change in ownership *is limited to* the change in the inflation rate not to exceed *two percent.* A new unlimited appraisal of a parcel of property is permitted only when the property is purchased, newly constructed, or subjected to a change in ownership. Such a new appraisal apparently is to be made based on then existing values—i.e., *not limited* to inflation not exceeding two percent.

"The only additional guideline discovered by research for determining the maximum change permitted is the requirement that valuation for tax purposes be just. (E.g., Art. VII, § 5, *Idaho Constitution*). Generally, valuation pursuant to an appraisal must relate to then present values and property cannot be substantially overvalued.

"Given the above proffered interpretation, Section Two of the initiative is patently and impermissibly discriminatory because a parcel of property which has been purchased, newly constructed or subjected to a change in ownership will be placed on the tax rolls at a value higher than that of a similar parcel which has not experienced one of these circumstances. Article VII, §§ 2 and 5, *Idaho Constitution* and the holding of *Idaho Telephone* [91 Idaho 425, 423 P.2d 337 (1967)] are the bases for this conclusion. Attention is again directed to that portion of the Analysis section of this Opinion entitled '2. *Uniform Reduction.*'

"The disparity of values and the unconstitutional disuniformity of taxation which results can be graphically illustrated as follows: Assume the 1978 base value of each of two identical residences was $60,000. Ten years pass, the houses remain identical except that House A has been sold in the tenth year for $110,000—a compound annual growth rate of 6.5%. At the then present value, House A owner pays $1,100 in property taxes (assuming maximum of 1% is imposed). House B now carries a value for taxation purposes of $73,000 (including the maximum 2% inflation rate which is permitted but apparently not required by the initiative). House B owner, again assuming the maximum, pays only $730.00 in taxes. The disparity is accentuated further with the passage of additional time and the occurrence of additional sales of House A.

"This discriminatory result clearly falls within the prohibition of Art. VII, § 5, *Idaho Constitution,* as construed by the Idaho Supreme Court in *Idaho Telephone, supra.* Again, the taxes levied do not fall equally upon similar property within the taxing district.

"Moreover, the legislature, unlike the Art. VII problem encountered in connection with Section One of the initiative, can not protect the concept favoring property not purchased, newly constructed or subjected to ownership change from constitutional attack by corrective legislation. The only sensible and certain safeguard is that of deleting the distinction made in Section Two of the initiative between property purchased, newly constructed or subjected to change of ownership on the one hand, and property which has not experienced any of these circumstances on the other hand." (Emphasis in original.)