693 P.2d 454

**EHCO RANCH, INC., J. Clint Hoopes and Karma Hoopes, Jay and Beverly Ricks, Lyle and Jo Smith, Ray and Joanne Ricks, Darrell Ard, Plaintiffs-Appellants,**

**v.**

**STATE of Idaho, ex rel. John V. EVANS, Governor; Pete T. Cenarrusa, Secretary of State; David H. Leroy, Attorney General; Joe R. Williams, State Auditor; and Jerry L. Evans, Superintendent of Public Instruction, as the State Board of Land Commissioners, and Gordon C. Trombley, Director, Department of Lands, Defendants-Respondents.**

Nos. 15036, 15039.

Supreme Court of Idaho.

Dec. 28, 1984.

---

Roger J. Hoopes, Brent J. Moss, Val Dean Dalling, Jr., Rexburg, for plaintiffs-appellants.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Robert J. Becker, Patrick J. Kole, Deputy Attys. Gen., Boise, for defendants-respondents.

HUNTLEY, Justice.

Appellants Ehco Ranch and other landholders were successors in interest to parties who had in 1917 and 1919 purchased school endowment lands from the State of Idaho on installment sale contracts (called "land certificates"). The predecessor purchasers had paid on their contracts until the early 1930's, when conditions caused by the Great Depression forced them to default. The State Board of Land Commissioners (Board) declared the contracts null and void, and purchasers forfeited their interests in the property, though the Legislature authorized the Board to lease the forfeited lands to defaulted purchasers, many of whom remained in possession and ranched or farmed the lands.

In 1923 the Legislature had enacted legislation[1] forbidding further sale of State endowment land without state reservation of mineral rights. In 1926 the Board adopted an official policy that when installment contracts were reinstated, mineral rights would be reserved.[2]

As economic conditions improved, defaulted purchasers were allowed to apply for "reinstatement" of the forfeited contracts. Eventually (subsequent to 1926) all the appellants or their predecessors paid off their contracts and were issued deeds.

Some landowners had leased out their mineral rights, and now contend that they had been told by the Board that the miner-al rights were theirs. In 1978 the State notified appellants or their predecessors that the State in fact owned the mineral rights in the land, since mineral rights had been reserved at the time of reinstatement of the contracts. Appellants commenced suit in 1979, seeking quiet title to the mineral rights.

The district court held that appellants or their predecessors had defaulted; that the contracts had been validly forfeited; that the reinstated contracts incorporated the proviso that the State reserved mineral rights; and that even if a technical defect had occurred in the forfeiture process, appellants could not assert the alleged defect because they were not within the class of persons protected by the statute. We affirm.

Idaho Session Laws 1933, ch. 7, amending I.C. § 56–316,[3] in effect at the time of the defaults, provided that upon default:

The State Board of Land Commissioners shall declare such forfeiture, and shall annul such contract and certificate .... When such forfeiture shall have been declared and entered in the minutes, as herein before provided, all rights of such purchaser in and to said land shall be and are extinguished and the State Board of Land Commissioners may sell the land again; provided further, that in case of such default and declaration of forfeiture except as provided for in this section, all previous payments made by a purchaser on account of such land shall be forfeited to the State and title and right of possession to such land shall be in the State as if no sale had ever been made.

The annullment of the certificate has the effect of extinguishing the contract along with all rights therein.

I.C. § 56–316 also stated:

... provided, that unless the disposition has meanwhile been made of the land,

---

1. I.C. § 47–701 provides that mineral rights to lands belonging to the State are reserved to the State and reserved from sale except upon a rental or royalty basis.

2. Official Minutes of the Board of Land Commissioners, Book 8, p. 34, March 6, 1926.

3. The substance of I.C. § 56–316 is now contained at I.C. § 58–316, (Supp.1980).

said State Board of Land Commissioners may, upon application of the former purchaser, reinstate any such cancelled certificate upon compliance by the purchaser with such conditions as the Board may impose. Such conditions to be imposed by the Board shall include the funding of delinquent installments of principal and interest accrued to the date of reinstatement, by distributing the same in annual payments, to commence with the expiration of the original period covered by the contract of sale, or any extension or extensions thereof, such deferred payments to draw interest from the date of the reinstatement of the certificates; but the board may, in its discretion, impose other conditions, and may, in its discretion, require the payment of such delinquencies in cash at the time of reinstatement. Appellants argue that "reinstatement" of the contracts revived the original contracts exactly as written. Appellants fail to consider, however, that the forfeiture statute extinguishes a purchaser's rights in land after forfeiture, to the extent that the Board may resell the property. Only if the property has not been resold does the purchaser then have the right to apply for reinstatement. Even then, the Board may, pursuant to statute, impose on the reinstated contract any conditions the Board in its discretion chooses.

Appellants also fail to acknowledge the rule that extant law of the state is part of every contract with the state of Idaho. *Fidelity Trust Co. v. State,* 72 Idaho 137, 237 P.2d 1058 (1951). When appellants or their predecessors' land contracts were reinstated, the Legislature had already determined that mineral rights of state lands, including school endowment lands, would be reserved to the state. The Board's 1926 policy of reserving mineral rights upon reinstatements indicates its acknowledgement of legislative mandate. Clearly, that law must be incorporated into any contract arising after its passage.

Over the last forty years three Attorneys General have issued opinions on the subject of mineral rights reservation. While not binding on this Court, those opinions are entitled to consideration. Attorney General Bert R. Miller stated in a January 25, 1944 official opinion:

> It is my opinion that the provisions quoted above (Idaho Code § 58–316), cut off the rights to conveyance of the mineral rights vested in the purchaser by the 1910 contract.

> . . . . .

> All persons are charged with knowledge of the law and the purchaser was in contemplation of law appraised by the 1923 enactment (Idaho Code § 47–701), the 1925 amendment, and the 1933 reinstatement clauses of the necessary reservation of mineral rights in case of cancellation and reinstatement.

> . . . . .

> The mineral reservation attached (to the State) at the instant of forfeiture, and if prior to reinstatement the land Board had sold the land to a third party, a sale would have been made subject to the mineral reservation. This could only have been done upon the theory of an absolute reservation of the mineral right to the State as against purchaser's equities.

Opinion of the Attorney General Bert R. Miller, January 25, 1944; adopted by reference by Attorney General Robert E. Smiley, June 7, 1951; in accord Attorney General Opinion No. 78–38, Wayne Kidwell, September 8, 1978.

Appellants also contend that the State failed to follow the statutory procedures for forfeiture, that is, that the State did not cause the minutes of Board forfeiture actions to be recorded in the Teton County records. The failure to record, according to appellants, meant that there was no notice to appellants or their predecessors with regard to the conditions of forfeiture. This argument is without merit. Notice requirements of recording acts are not intended to protect the defaulting purchaser who already has notice of default and cancellation. Notice is to third parties who might otherwise rely to their detriment on the

assumption that a purchaser still had valid interest in the property. The trial court ruled properly that appellants here were not within the class of persons intended to be protected by the recording requirement.

 The lands at issue here are, as noted before, school endowment lands. These lands are held in trust for the people of the state. Idaho Constitution, Art. 9, § 8; *State v. Peterson*, 61 Idaho 50, 97 P.2d 603 (1939). The State cannot be divested of such lands by implication. The validity of divestment depends upon whether it occurred pursuant to a proper exercise of authority by those executing a deed, and whether the State's interest in the property is of such a nature that it could be conveyed. *State Land Board v. Heuker*, 548 P.2d 1323 (Or.App.1976); 6 Thompson, Real Property 315, § 2987 (1962). The Legislature granted authority to sell school lands after May 1, 1923, only with reservation of mineral rights. The State Board of Land Commissioners and its executive officers cannot act beyond their legislative authority. Idaho Constitution Art. 9 § 7, I.C. § 58–104. Even if the Land Board had intended to grant mineral rights to appellants or their predecessors when the contracts were reinstated, it had no power to do so. The State would not be bound by the negligent or unlawful acts of its officials. Barendregt v. Walla Walla School District No. 140, 611 P.2d, 1385 (Wash.App. 1980); People v. District Court in and for Chaffee County, 255 P.2d 743 (Colo.1953).

The trial court's ruling is affirmed.

Costs to respondent. No attorney's fees.

DONALDSON, C.J., SHEPARD and BAKES, JJ., and OLIVER, J., Pro Tem., concur.