756 P.2d 398

**SANDPOINT CONVALESCENT SER-
VICES, INC., d/b/a Sandpoint
Manor, Petitioner–Appellant,**

v.

**IDAHO DEPARTMENT OF HEALTH
AND WELFARE, Respondent.**

No. 16898.

Supreme Court of Idaho.

March 21, 1988.

On Denial of Rehearing May 26, 1988.

Lojek & Hall, Ctd., Boise, for petition-er-appellant. Donald J. Lojek (argued).

Jim Jones, Atty. Gen., Elaine F. Eberhar-ter–Maki, Deputy Atty. Gen. (argued), Boise, for respondent.

BISTLINE, Justice.

Appellant Sandpoint Convalescent Services, Inc. (Sandpoint Manor) purchased its health care facility from D.J. Convales-cent Care, Inc., on June 30, 1983, for about 1.1 million dollars. Prior to that time the owner was reimbursed by the Department of Health and Welfare (DHW) for deprecia-tion due to the wear and tear on the facility resulting from services provided to Medicaid recipients. Idaho Code § 56–104 provides that when such a facility is sold, the previously authorized depreciation is to be recaptured. Sandpoint Manor contends that because the statute requires that the recaptured depreciation be paid by the buy-er rather than the seller, it violates sub-stantive due process. We agree with the district judge that no constitutional infirmi-ty is presented and therefore affirm.

Sandpoint Manor is a long-term health care facility providing skilled nursing care in Sandpoint, Idaho. As such, Sandpoint Manor is a participant in the Medicaid pro-gram, pursuant to Title XIX of the Social Security Act, which is administered in this state by DHW. Under this program, Sand-point Manor is a "provider" of medical services and is "reimbursed" for its costs by DHW.

This appeal arises from DHW's Sand-point Manor Final Audit disallowances for the six month period ending December 31, 1983. Sandpoint Manor contested many

findings of the Final Audit, arguing that such costs disallowed were actually reasonable, ordinary and necessary in providing patient care. The hearing examiner disagreed, sustaining the disallowance in the Final Audit in its entirety. Sandpoint Manor appealed to the district court on four issues, only one of which is at issue here, namely, whether I.C. § 56–104 violates due process. Judge Schwartzman found no constitutional violation in requiring Sandpoint Manor to pay $34,216 in recaptured depreciation, previously allowed to D.J. Convalescent Care, Inc., from whom Sandpoint Manor had purchased.

The statute in question, I.C. § 56–104(a) and (b), in 1983 read:

(a) *Where depreciable assets* that were used in the medicaid program by a facility subsequent to January 1, 1982, and for which depreciation has been reimbursed by the director, are sold for an amount in excess of their net book value, depreciation so reimbursed shall be recaptured from the *buyer* of the facility in an amount equal to reimbursed depreciation or gain on the sale, whichever is less. Depreciation shall be recaptured in full if a sale of the depreciated facility takes place within the first five (5) years of seller's ownership after January 1, 1982. For every year the asset is held beyond the first five (5) years, the total depreciation recaptured shall be reduced by ten percent (10%) per annum of total depreciation taken.

(b) Depreciation shall be recaptured by the director from the buyer of the facility over a period of time not to exceed five (5) years from the date of sale, with not less than one-fifth (⅕) of the total amount being recaptured for each year after such date. (Emphasis added).[1]

1981 Idaho Sess. Laws ch. 159, § 1, at 273–74.

The gravamen of Sandpoint Manor's argument is that because I.C. § 56–104 requires that the depreciation be recaptured from the *buyer* rather than the seller, property is taken without due process and therefore the statute cannot withstand constitutional scrutiny.[2] To begin our analysis, we note that whenever possible, a statute must be construed so as to achieve a constitutional result. *Matter of 1979 Valuation of Parcel No. R2348750330*, 104 Idaho 681, 688, 662 P.2d 1125, 1132 (1983). Moreover, a statute is presumed to be constitutional; the burden is on the party disputing constitutionality to prove otherwise. *Standlee v. State*, 96 Idaho 849, 853, 538 P.2d 778, 782 (1975). This Court recently defined substantive due process in *Pace v. Hymas*, 111 Idaho 581, 586, 726 P.2d 693 (1986):

"Substantive due process" means "that state action which deprives [a person] of life, liberty or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.'" (Citations omitted; brackets in original).

Hence, refining further the burden of proof, Sandpoint Manor must show that application of the depreciation recapture statute is arbitrary, capricious, or without a rational basis.

Our review of I.C. § 56–104, and the legislative scheme of which it is part, convinces us that the depreciation recapture statute passes constitutional muster. Participation in the Medicaid program by a provider is voluntary. The program "is not designed to protect providers from consequences of their business decision or from business risks." *Briarcliff Haven, Inc., v. Dept. of Human Resources*, 403 F.Supp. 1355, 1363 (1975).

Furthermore, the lucid reasoning of District Judge Schwartzman, which we adopt as our own, brought him to the legal conclusion that Sandpoint Manor was on notice as to the workings of the recapture statute, and therefore could have—or should have

1. Idaho Code § 56–101 defines net book value as the "historical cost of an asset, less accumulated depreciation."

2. United States Const. Amend. 14, § 1 provides: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." *See also,* art. 1, § 13 of the Idaho Constitution.

—taken into account the applicability of § 56–104 at the bargaining table in arriving at the price to be paid to its seller.

The statute, quite simply, provides its own notice ... As noted by the Hearing Officer, Sandpoint Manor purchased with notice of the statute and was fully able to bargain with the seller as to the buyer's recapture liability. Application of the depreciation recapture statute to Sandpoint Manor under these circumstances does not violate traditional notions of fundamental fairness. There is little difference in assessing the depreciation recapture against Sandpoint Manor in this case than in assessing delinquent property tax liability against the buyer of property encumbered by a tax lien.

Memorandum Decision, R. at 26.

As the district court pointed out, a tax lien, like the depreciation recapture statute, renders the buyer of property liable for sums accumulated during the seller's ownership. This principle is not foreign to our law. For example, under the Bulk Transfer provisions of the Uniform Commercial Code (I.C. §§ 28–6–101 through 28–6–111), a purchaser of an enterprise who does not comply may become liable to the creditors for the entire amount of a seller's existing indebtedness to his creditors at time of sale. Although a given purchaser may not actually know of those provisions, the legislature has left it to the parties to such transactions to become aware of the applicable law. *In Ehco Ranch, Inc. v. State ex rel. Evans*, 107 Idaho 808, 693 P.2d 454 (1984), we quoted with approval an opinion of the Attorney General which provides: "All persons are charged with knowledge of the law and the purchaser was in contemplation of law appraised by [certain legislation] of the necessary reservation of mineral rights in case of cancellation and reinstatement."[3]

Unfortunately, where it is undoubtedly so that most, if not all, practicing attorneys have been aware of the Bulk Sales Act since attending law school, the statute here in question is not one of general applicability and has only been part of the Idaho Civil Code since enacted in 1981. S.L. 1981, ch. 159, § 1, p. 271. The particular section here involved was a part of an entire new Chapter 1 to Title 56, Public Assistance and Welfare of the Idaho Code, made effective on approval, which was March 30, 1981. Thus, the legislature could have determined that the statute, by requiring payment from the purchaser, more appropriately guarantees the recapture of depreciation than would have recapture from a seller who may have filed a bankruptcy petition or moved from the state. Such is a conceivable legitimate basis for I.C. § 56–104. Under the rational basis test the recapture statute need only relate to *any* legitimate end of government. "As long as there is any conceivable basis for finding such a rational relationship, the law will be upheld."[4] The legislature need not explicitly announce the basis for each of its enactments. Nor are we obliged to delve into legislative history to find it. *See Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). In this instance, according to the district judge,

[t]he testimony indicates that it is clear that as a practical matter it is logical to seek the recovery of this recaptured depreciation from the purchaser, since the reimbursement relation does not continue with the seller.

Memorandum Decision, R. at 24.

Therefore, because there is a conceivable basis for recapturing depreciation from the buyer of a nursing home for depreciation previously paid to the seller as a cost of providing medical care, I.C. § 56–104 cannot be categorized as arbitrary. Accordingly, Sandpoint Manor's constitutional challenge is not persuasive.

■ Sandpoint Manor cites *Woods v. Holy Cross Hospital*, 591 F.2d 1164, (5th Cir.1979), for the proposition that a "state must prove a compelling reason for a law only if it restricts a fundamental right."

---

**3.** The Court observed that those opinions are entitled to consideration, while not binding. 107 Idaho at 811, 693 P.2d at 457.

**4.** Nowak, Rotunda & Young, *Constitutional Law*, 2d Ed. (1983) at 448.

591 F.2d at 1176. The proposition is a correct statement of the law. The fundamental right involved here is procedural due process, the hallmarks of which are notice and the opportunity to be heard. "[T]hese two fundamental conditions ... seem to be universally prescribed in all systems of law established by civilized countries." *Twining v. New Jersey*, 211 U.S. 78, 110–11, 29 S.Ct. 14, 24, 53 L.Ed. 97 (1908) (quoted in L. Tribe, *American Constitutional Law*, § 10–8 at 508 (1978)). The district court found no procedural due process violation:

> Sandpoint appears to be arguing that it was denied due notice of the statute and a hearing as to the effects of its application prior to the time it purchased the health care facility. Section 56–104 was enacted in 1981 and was on the books when the purchase was consummated. As far as a hearing is concerned, it would be ludicrous to require the state to afford a prospective purchaser of a health care facility a hearing as to the application of its statutes and regulations prior to the time that those statutes apply to that purchaser.

Memorandum Decision, R. at 25. We find no error in this reasoning.

The district court is *affirmed*. Costs to respondent. No attorney fees awarded.

BAKES and HUNTLEY, JJ., McFADDEN, J. (retired), and WALTERS, J. Pro Tem.,* concur.

### ON DENIAL OF PETITION FOR REHEARING

█ The petition for rehearing by appellant Sandpoint Manor asserts an objection to the foregoing opinion which merits brief comment. Apart from the constitutionality of I.C. § 56–104, appellant contends that the Court failed to address an argument concerning the "Boren Amendment," 42 U.S.C. § 1396a(a)(13)(A). However, this statutory argument was not raised in the court below. As the district court stated: "Sandpoint's challenge to the depreciation recapture issue below has been limited

* Walters, J., Chief Judge, Court of Appeals, sitting

*solely* to the question of section 56–104's constitutionality." R. at 28 (emphasis added).

Furthermore, the single question raised by appellant's initial brief filed with this Court states: "Does I.C. § 56–104 violate traditional notions of fundamental fairness and due process?" Appellant's brief at 6. Although the Boren Amendment was tersely discussed in appellant's brief, it is well-established that "[i]ssues not raised below and presented for the first time on appeal will not be considered or reviewed." *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 460, 649 P.2d 1214, 1216 (1982).

BAKES and HUNTLEY, JJ., concur.

McFADDEN and WALTERS, JJ., Pro Tem, concur.