August 26, 1992

233

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| CARMEN MASGA PANGELINAN, | ) | APPEAL NO. 91-002 |
| | ) | CIVIL ACTION NO. 88-895(R) |
| Plaintiff/Appellant, | ) | |
| | ) | |
| vs. | ) | OPINION |
| | ) | |
| ANTONIA MASGA TUDELA, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| _____ | ) | |

Argued and Submitted October 30, 1991

Counsel for Plaintiff/Appellant:    Reynaldo O. Yana
P.O. Box 52
Saipan, MP 96950

Counsel for Defendant/Appellee:    Vicente T. Salas
Douglas Muir
SALAS & MANIBUSAN
P.O. Box 1309
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, HILLBLOM and KOSACK,
      Special Judges.

DELA CRUZ, Chief Justice:

Carmen Masga Pangelinan ("Carmen") appeals an adverse judgment quieting title to a certain parcel of land in favor of her cousin, Antonia Masga Tudela ("Antonia"). She contends that, under principles of administrative res judicata, neither the trial court nor the Northern Mariana Islands Land Commission could set aside a

234

1958 ownership determination which had adjudicated the ownership to the land in favor of her father. She also contends that, with respect to the certificate of title issued by the Northern Mariana Islands Land Commission (the "Land Commission") in 1984, the Land Commission failed to follow required statutory procedure. She argues that failure to do so rendered the title certificate defective.

Because we find that the 1958 land title determination issued in favor of Carmen's father had no legal basis when it was issued, and because the trial court was justified in concluding that Carmen's father, by his own admission, never owned the property at issue, we affirm the judgment of the trial court upholding the Land Commission certificate of ownership in favor of Antonia.

I. •

FACTS

On December 6, 1988, Carmen sued her cousin Antonia to quiet the title to a parcel of land on Rota referred to as "Uyulang."[1] Carmen based her claim of ownership on a deed of gift executed by her father, Adan M. Masga ("Adan"),[2] by which he conveyed Uyulang to Carmen on May 13, 1975. Antonia counterclaimed alleging that she owns the property as the offspring and sole surviving heir of Gabriel M. Masga ("Gabriel"), deceased, who had received Uyulang as

---

[1] The property has been designated as Lot No. 3013, situated at Uyulang, Rota, and containing an area of approximately 7,709 square meters.

[2] Adan has since passed away.

his inheritance from his father before World War II.

A bench trial was held, and the court ruled in favor of Antonia. It found that Carmen's father, Adan, had executed, on October 11, 1972, an "affidavit" which declared that Adan does not own Uyulang, and which further stated that the property belongs to his deceased brother, Gabriel, as his share in their father's estate. Based on the strength of the affidavit, the Superior Court decided that Uyulang belonged to Gabriel and has descended to his sole surviving heir, Antonia. Other facts pertinent to the issues raised are noted in the discussion below.

## II.

### ISSUES PRESENTED

Carmen raises two primary issues for our consideration:
(1) whether the Superior Court* erroneously "set aside" the land title determination made by the district land title officer on October 27, 1958, which determined that Adan owned Uyulang,[3] and (2) whether it was erroneous for the Superior Court to rely on the Land Commission certificate of title when (a) the Land Commission did not follow the statutory procedure required by 2 CMC § 4241-4249 and (b) the Land Commission has no authority to set aside a land title determination issued by an agency.

Alternatively, Carmen argues that if Adan's affidavit were viewed as an instrument of conveyance, his deed of gift to Carmen

---

[3] A concise picture of the land title determination process in the Commonwealth before the advent of the Land Commission Office is set forth in Estate of Dela Cruz, Appeal No. 90-023 (N.M.I. Feb. 7, 1991).

was recorded prior to the issuance of the Land Commission certificate of title in favor of Antonia in 1984. Because the deed was recorded before issuance of the certificate of title, Carmen contends that it has priority over, and is superior to, the Land Commission certificate of title.

## III.

## STANDARD OF REVIEW

■ Whether the Superior Court erroneously set aside the 1958 land title determination is a question of law which is reviewable <u>de novo</u>. <u>In Re Estate of Mueilemar</u>, No. 90-020, 1 N.Mar.I. 174 (N.M.I. Nov. 29, 1990).

■ Similarly, whether the Superior Court erroneously relied on the title certificate of the Land Commission is also a question of law which we review <u>de novo</u>. <u>Camacho v. Northern Marianas Retirement Fund</u>, No. 90-007, 1 N.Mar.I. (N.M.I. Sept. 21, 1990)

■ If we determine that the affidavit of Adan is an instrument of conveyance, the alternative issue concerning priority of recordation is one of law which is reviewable <u>de novo</u>.

## IV.

## ANALYSIS

Sometime before 1958, Adan filed a claim of ownership to Uyulang. At the time, Adan's brother, Gabriel, had already passed away. In 1958, the district land title officer issued Determination of Ownership No. 220 ("T.D. 220") in favor of Adan.

On October 11, 1972, Adan executed an "affidavit," which he

237

filed with the Land Commission. Adan stated that Uyulang, which he claimed in 1958 and for which T.D. 220 was issued in his name, "shall go to/is for Antonia Masga Tudela because this land was exchanged with the farm at Mi-ingao inherited by Gabriel, my brother, from our father Vicente Masga."

Three years later, in 1975, Adan also executed a deed purporting to convey Uyulang to his daughter Carmen. Relying on Adan's 1972 affidavit, the Land Commission issued a title certificate on June 27, 1984 declaring Antonia the owner of Uyulang. Carmen filed suit to quiet title.

At trial, the parties focused on the issue of recordation: whether Adan's 1972 affidavit or his 1975 deed to Carmen has priority. The trial court instead determined that Adan's affidavit is not an instrument of conveyance but a "declaration against interest" by which Adan disclaimed ever having any ownership interest in the property. It ruled that the affidavit "clearly sets forth that Adan Masga does not own Uyulang." On appeal, Carmen challenges the trial court ruling that her father, Adan, does not own Uyulang. She contends that T.D. 220 had already determined that Adan owned Uyulang, became final, and may not now be set aside.

In _Estate of Dela Cruz_, No. 90-023 (N.M.I. Feb. 7, 1991), we held that land title determinations issued pursuant to Land Management Regulation No. 1 should be accorded finality under the principle of administrative res judicata unless (1) the determination was void when issued, (2) the record is patently

238

inadequate to support the determination, (3) the administrative ruling contravenes an overriding public policy, or (4) to uphold the administrative decision would result in manifest injustice.

We find that the first, second, and fourth exceptions enumerated in Estate of Dela Cruz apply to the facts of this case. Although Adan had claimed Uyulang and T.D. 220 was issued in his name in 1958, his 1972 affidavit submitted to the Land Commission clearly shows that Adan disclaimed having any ownership interest in Uyulang.

By his own affidavit, Adan declared that Uyulang belonged to Gabriel, that Uyulang was obtained in exchange for the Mi-ingao property which his brother Gabriel had inherited from their father Vicente Masga, and that Uyulang therefore "shall go to/is for Antonia Masga Tudela." The trial court correctly ruled that Adan's affidavit was not an instrument of conveyance. The affidavit was a declaration against interest. Since he had no interest in Uyulang, Adan had nothing to convey.

Adan's affidavit called into question the validity of T.D. 220 from the date it was issued. The certificate of title issued by the Land Commission in 1984 in Antonia's name corrected the error which Adan, through his affidavit, intended to rectify. To allow T.D. 220 to stand would result in "manifest injustice." None other than Adan himself, while alive, stated that Gabriel owned Uyulang.

We agree with Carmen that the Land Commission "set aside" T.D. 220, but it was justified in doing so because (1) T.D. 220 was clearly erroneous when issued, (2) not to set T.D. 220 aside would

239

result in manifest injustice, and (3) Adan's affidavit effectively rendered the record supporting T.D. 220 "patently inadequate." We disagree with Carmen's contention, however, that the trial court relied on the Land Commission certificate of title as the basis for its ruling. In upholding the Land Commission certificate of ownership in favor of Antonia, the court based its ruling on Adan's affidavit that he never owned Uyulang and that, consequently, T.D. 220 was erroneous and should be set aside. A court may set aside an administrative adjudication in order to prevent manifest injustice. In Re Estate of Dela Cruz, No. 90-023 (N.M.I. Feb. 7, 1991). Adan's affidavit conclusively shows that T.D. 220 was invalid. It was intended to set aside T.D. 220 in order to prevent the "manifest injustice" which resulted therefrom.

Carmen next contends that her right to due process of law was violated by the Land Commission since it failed to follow the statutory procedure required of that agency in determining disputed ownership claims. See 2 CMC § 4241, et seq. She argues that Adan was given no notice and opportunity "to challenge the authenticity of [his] affidavit filed in 1972," and therefore the certificate of title was void. We disagree.

Adan himself declared by affidavit that he had no ownership interest in Uyulang. We see no reason why the Land Commission should call Adan back so that he could challenge the "authenticity" of his own affidavit. There is nothing in the record below which shows that the failure of the Land Commission to call back Adan somehow violated Adan's right to due process. At trial, his privy

240

in interest, Carmen, litigated the underlying issue of ownership, and the court entered judgment accordingly. Our review of the trial record shows that the judgment entered is supported by the evidence and should not be disturbed.

■Since Adan never owned Uyulang, his 1975 deed of gift to Carmen conveyed nothing. Furthermore, the Superior Court correctly determined that Adan's 1972 affidavit was not an instrument of conveyance. Thus the recordation issue -- whether the Land Commission's certificate of title has priority over Adan's 1975 deed to Carmen -- has no merit. The only possible significance of the 1975 deed from Adan to Carmen, as recorded, was to create a cloud on Antonia's title. The recordation statute would have relevance where, for example, a bona-fide purchaser for value buys property from a landowner without notice of a previous conveyance by that landowner.[4] See, Pangelinan v. Unknown Heirs of Mangarero, No. 90-015, 1 N.Mar.I. 141 (N.M.I. Nov. 1, 1990). But where, as here, Adan never owned Uyulang, his deed to Carmen, even if recorded, conveyed no interest. And Carmen, in turn, cannot argue that her deed from Adan, who has no interest in Uyulang, is somehow superior to an agency adjudication.

---

[4] See Echo Ranch, Inc. v. Evans, 693 P.2d 454, 457-58 (Idaho 1984)(recording acts supply notice "to third parties who might otherwise rely to their detriment on the assumption that a purchaser still had valid interest in the property."); Jeffers v. Doel, 658 P.2d 426, 428 (N.M. 1982)("The purpose of the [recording] statute is to prevent injustice by protecting innocent purchasers for value without notice of unrecorded instruments who have invested money in property.")

## V.

## CONCLUSION

Accordingly, the judgment of the Superior Court in favor of Antonia is hereby **AFFIRMED**.

Dated at Saipan, MP, this _26th_ day of August, 1992.

JOSE S. DELA CRUZ
Chief Justice

LARRY L. HILLBLOM
Special Judge

REXFORD C. KOSACK
Special Judge