787 P.2d 1159

**Christopher NORTHCUTT and Theresa Ann Northcutt, husband and wife, Plaintiffs–Appellants,**

v.

**SUN VALLEY COMPANY, Defendant–Respondent,**

and

**Athalon Products, Ltd., a Colorado corporation; and Does I through IV, Defendants.**

No. 17679.

Supreme Court of Idaho.

Feb. 27, 1990.

E. Lee Schlender, Chartered, Hailey, for plaintiffs-appellants.

Elam, Burke & Boyd, Boise, for defendant-respondent. Robert M. Tyler, Jr. argued.

JOHNSON, Justice.

This is a ski accident case. The primary issues presented are whether a ski area operator may be liable (1) for personal injuries to a skier who struck a signpost at the confluence of several ski runs and (2) for failing to determine the identity of another skier who was involved in the accident. In reaching a decision on these issues we are required to construe I.C. §§ 6–1101 through 6–1109 (the Act), which define the responsibilities and liabilities of skiers and ski area operators. We also consider whether the act violates the equal protection clause of the Idaho Constitution or of the United States Constitution.

We hold:

1. Under the Act a ski area operator is not liable for the improper placement of a sign erected to eliminate, alter, control or lessen the inherent risks in skiing or for the improper design, construction or padding of a signpost that supported the sign.

2. A ski area operator does not have the duty to provide a ski patrol that will determine the identity of a skier who was involved in a ski accident with another skier.

3. The Act does not violate the equal protection clause of the Idaho Constitution or of the United States Constitution.

We affirm the order of the trial court granting summary judgment to Sun Valley Company.

I.

THE BACKGROUND AND PRIOR
PROCEEDINGS.

Christopher Northcutt was severely injured in a skiing accident that occurred on Bald Mountain, one of the ski areas operated by Sun Valley Company. Christopher was injured when he struck a signpost at the confluence of several ski runs after another skier (the unidentified skier) collided with him. Other skiers at the scene of the accident detained the unidentified skier, who refused to identify himself. A member of the Sun Valley ski patrol who arrived and began to administer first aid to Christopher permitted the unidentified skier to leave the scene without requiring him to identify himself.

Christopher sued Sun Valley to recover damages for his injuries. His wife joined the suit to recover damages for loss of consortium. The Northcutts alleged that their damages were caused by Sun Valley's negligence in (1) placing a rigid wooden sign at a dangerous location, (2) designing and constructing the sign using materials that would injure a skier who collided with

it, (3) failing to construct the sign of "break-away" materials, (4) failing adequately to pad the signpost to protect skiers who might collide with it, and (5) failing to identify the skier who collided with Christopher, thereby depriving the Northcutts of the ability to pursue their claims against him.

Sun Valley moved for summary judgment. In its memorandum in support of the motion, Sun Valley contended that it was absolved from liability by the Act and that it could not be held liable for not identifying the unidentified skier. In part of its argument that it was absolved from liability by the Act, Sun Valley noted that similar ski area liability statutes have been attacked on constitutional grounds and that courts in other states have found that the statutes further a rational state purpose in protecting the local ski economy. Sun Valley also noted that this Court has upheld the constitutionality of the statute which limits the liability of landowners to nonpaying recreational users of land.

In opposition to the motion, the Northcutts presented opinions of experts through their depositions that the sign was improperly placed and the signpost improperly padded. An expert skier gave his deposition testimony that the sign was in a dangerous location and that the sign should have been constructed with "break-away poles" instead of the wooden posts that were used.

The deposition testimony of the director of the ski patrol on Bald Mountain indicated that the Sun Valley ski patrol had a policy concerning the identification of a skier who caused an accident:

Q. What was the policy of the ski patrol, at that time, with regard to securing the name of anyone who was alleged to have caused an injury?

A. We are to ask for their name, if time permits; our primary duty is first aid.

(Deposition of Bruce Malone of January 9, 1986, at 37)

Also another member of the Sun Valley ski patrol testified in his deposition that the ski patrol was told to get the name of the person who caused the accident after they had attended to any injury. When asked what the reason for this procedure was, he answered: "The skier's liability law in the state of Idaho." (Deposition of Frank Cutler, at 32)

The Northcutts did not challenge the constitutionality of the Act in the trial court.

The trial court granted summary judgment in favor of Sun Valley on the ground that the Act "places the sole responsibility and liability for any injuries suffered by a skier, while participating in the sport on that skier." The trial court concluded that the Act "provides blanket immunity to ski areas and their operators for all but the most intentional torts." The trial court also found no authority on which to hold that Sun Valley had a duty to identify or detain the unidentified skier. In addition, the trial court noted that this Court "has ruled that these types of statutes are constitutional."

The trial court certified the order granting summary judgment in favor of Sun Valley as a final judgment pursuant to I.R.C.P. 54(b). The Northcutts then filed this appeal.

The Northcutts also sued Athalon Products, the manufacturer of the padding on the signpost. The claims against Athalon are not before us in this appeal.

## II.

### SUN VALLEY IS NOT LIABLE FOR CHRISTOPHER'S INJURIES.

█ The Northcutts assert that the Act immunizes ski area operators only from liability arising from risks inherent in the sport of skiing. With that proposition we agree. They argue that Christopher's injuries were not caused by a risk inherent in the sport of skiing and that therefore Sun Valley should be liable. With that conclusion we disagree.

The first section of the Act states its purpose:

**6-1101. Legislative purpose.**—The legislature finds that the sport of skiing is

practiced by a large number of citizens of this state and also attracts a large number of nonresidents, significantly contributing to the economy of Idaho. Since it is recognized that there are inherent risks in the sport of skiing which should be understood by each skier and which are essentially impossible to eliminate by the ski area operation, it is the purpose of this chapter to define those areas of responsibility and affirmative acts for which ski area operators shall be liable for loss, damage or injury, and to define those risks which the skier expressly assumes and for which there can be no recovery.

I.C. § 6–1101 (Supp.1989). In interpreting the meaning of other provisions of the Act we must read this statement of purpose together with the balance of the Act so as to give meaning to all of its parts in light of the legislative intent. *Moss v. Bjornson*, 115 Idaho 165, 166–67, 765 P.2d 676, 677–78 (1988).

I.C. § 6–1106 (Duties of skiers) contains these provisions:

It is recognized that skiing as a recreational sport is hazardous to skiers, regardless of all feasible safety measures which can be taken.

Each skier expressly assumes the risk of and legal responsibility for any injury to person or property which results from participation in the sport of skiing....

I.C. § 6–1107 (Liability of ski area operators) provides:

Any ski area operator shall be liable for loss or damages caused by its failure to follow the duties set forth in sections 6–1103 [Duties of ski area operators with respect to ski areas] and 6–1104 [Duties of ski area operators with respect to aerial passenger tramways], Idaho Code, where the violation of duty is causally related to the loss or damage suffered. The ski area operators shall not be liable to any passenger or skier acting in violation of their duties as set forth in sections 6–1105 [Duties of passengers] and 6–1106 [Duties of skiers], Idaho Code, where the violation of duty is causally related to the loss or damage suffered;

nor shall a ski area operator be liable for any injury or damage to a person who is not legally entitled to be in the ski area; or for any loss or damages caused by any object dropped, thrown or expelled by a passenger from an aerial passenger tramway.

These statutes clearly indicate that in enacting the Act the legislature intended to limit rather than expand the liability of ski area operators.

Under the Act one of the duties of ski area operators is "[n]ot to intentionally or negligently cause injury to any person." I.C. § 6–1103(10) (Supp.1989). The key to deciding whether Sun Valley may be liable for negligently locating the sign or designing, constructing or padding the signpost is interpreting what the legislature intended by imposing on ski area operators the duty not to cause injury to any person negligently.

Complicating our interpretation of the legislative intent with regard to this duty is the qualifying provision in the same subsection of the Act:

[P]rovided, that except for the duties of the operator set forth in subsections (1) through (9) of this section and in section 6–1104, Idaho Code, the operator shall have no duty to eliminate, alter, control or lessen the risks inherent in the sport of skiing, which risks include but are not limited to those described in section 6–1106, Idaho Code; and, that *no activities undertaken by the operator in an attempt to eliminate, alter, control or lessen such risks shall be deemed to impose on the operator any duty to accomplish such activities to any standard of care.*

I.C. § 6–1103(10) (emphasis added).

We interpret this portion of I.C. § 6–1103(10) to mean that the duties set forth in subsections (1) through (9) of I.C. § 6–1103 and in I.C. § 6–1104 are duties to eliminate, alter, control or lessen the inherent risks of skiing. We also interpret this portion to mean that a ski area operator has no other duties to eliminate, alter, control or lessen the inherent risks of skiing beyond those stated in I.C. §§ 6–1103 and

6–1104. We construe the last clause of this portion of I.C. § 6–1103(10) to eliminate any standard of care for a ski area operator in carrying out any of the duties described in I.C. §§ 6–1103 and 6–1104.

If a ski area operator has no duty to accomplish any activity undertaken in an attempt to eliminate, alter, control or lessen the inherent risks of skiing and if the duties described in I.C. §§ 6–1103 and 6–1104 are the only duties an operator has with regard to the inherent risks of skiing, then it necessarily follows that any activity of an operator to fulfill those duties may not be held to be negligence, since the operator had no duty to accomplish the activity "to any standard of care." The first element of a cause of action based upon negligence is "a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct." *Brizendine v. Nampa Meridian Irrigation Dist.*, 97 Idaho 580, 583, 548 P.2d 80, 83 (1976). Without a duty, there can be no negligence.

Construing all the provisions of the Act together to give meaning to each portion, we interpret the duty of a ski area operator not to cause injury negligently to refer to the failure to follow (1) any of the duties set forth in I.C. §§ 6–1103 and 6–1104 or (2) any duty that does not relate to eliminating, altering, controlling or lessening the inherent risks of skiing. While this reading of the duty not to cause injury negligently may seem tortured and unjust to an injured skier such as Christopher, this is the only interpretation we can give to I.C. § 6–1103(10) that is consistent with the purpose of the Act and that gives meaning to all of the provisions of the Act. If we were to say that a ski area operator could be liable for negligence in carrying out any of the duties described in subsections (1) through (9) of I.C. § 6–1103 or in I.C. § 6–1104, we would negate giving any meaning to the last clause of I.C. § 6–1103(10) ("no activities undertaken by the operator in an attempt to eliminate, alter, control or lessen [the inherent] risks [of skiing] shall be deemed to impose on the operator any duty to accomplish such activities *to any standard of care*."). (Emphasis added.)

■ One of the duties imposed on operators by I.C. § 6–1103 is "[t]o mark conspicuously the top or entrance to each slope or trail or area, with an appropriate symbol for its relative degree of difficulty." I.C. § 6–1103(3) (Supp.1989). It is apparent that the sign that was supported by the signpost with which Christopher collided was erected to fulfill this duty. The sign directed skiers to three ski runs and contained a symbol indicating the relative degree of difficulty of each. While I.C. § 6–1103(3) did require Sun Valley to mark the entrance to each of these slopes, trails or areas, the last clause of I.C. § 6–1103(10) negates any duty to accomplish this marking "to any standard of care."

Therefore, even assuming that Sun Valley may not have properly located the sign or properly designed, constructed or padded the signpost, the Act excludes any liability of Sun Valley to the Northcutts caused by these activities.

### III.

### SUN VALLEY DID NOT HAVE THE DUTY TO PROVIDE A SKI PATROL TO DETERMINE THE IDENTITY OF THE UNIDENTIFIED SKIER.

■ The Northcutts assert that Sun Valley had a duty to determine the identity of the unidentified skier. We disagree.

We first note that the responsibility for the collision between Christopher and the unidentified skier is theirs and not Sun Valley's and that the unidentified skier had the duty to identify himself following the accident:

The responsibility for collisions by any skier while actually skiing, with any person, shall be solely that of the individual or individuals involved in such collision and not that of the ski area operator.

No person shall ... depart when involved in a skiing accident, from the scene of the accident without leaving personal identification, including name and address, before notifying the proper authorities....

356

I.C. § 6–1106 (Supp.1989).

Under the Act one of the duties of a ski area operator is "[t]o provide a ski patrol with qualifications meeting the standards of the national ski patrol system." I.C. § 6–1103(8) (Supp.1989). This is one of the duties imposed on a ski area operator to eliminate, alter, control or lessen the inherent risks of skiing. Therefore, in accord with our analysis above concerning the duty of a ski area operator not to cause injury negligently, in providing a ski patrol a ski area operator has only the duty to provide a ski patrol meeting the standards of the national ski patrol system. There is no evidence that the ski patrol member who attended Christopher after the accident did not meet the standards of the national ski patrol system. The evidence that Sun Valley instructed its ski patrol to ask for the name of anyone who was alleged to have caused an injury or who was responsible for an accident, if time permitted following the administration of first aid, even when construed liberally, does not create any duty under I.C. § 6–1103(8) to determine the identity of a skier involved in an accident. Sun Valley's only duty under that subsection was to provide a ski patrol with qualifications meeting the standards of the national ski patrol. Because there is no evidence in the record that Sun Valley failed to follow the duty set forth in I.C. § 6–1103(8), it is not liable for the failure to determine the identity of the unidentified skier.

IV.

THE ACT DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSES OF THE STATE AND FEDERAL CONSTITUTIONS.

■ The Northcutts have listed as one of the issues presented on appeal whether those sections of the Act relied on by the trial court in its rulings are unconstitutional because they violate the equal protection clause of the Idaho Constitution and of the United States Constitution. Although the Northcutts did not present this issue to the trial court, we address it here, because it

was presented to the trial court by Sun Valley, because the trial court held the Act constitutional, because the Northcutts have raised the issue here and because it has been fully briefed and argued before us.

In its memorandum in support of its motion for summary judgment, Sun Valley argued that the Act was constitutional because it furthers a rational state purpose in protecting the local ski economy. In its decision and order granting summary judgment to Sun Valley, the trial court stated:

This Act, simply put, provides blanket immunity to ski areas and their operators for all but the most intentional torts. As a matter of policy, this Court is opposed to the kind of protections afforded to certain persons and industries. However, our Supreme Court has ruled that these types of statutes are constitutional. It is, therefore, up to the legislature to change or repeal these special immunity provisions should they see fit, or for the Idaho Supreme Court to further review these statutes.

Ordinarily, issues not raised below and presented for the first time on appeal will not be considered or reviewed. *Sandpoint Convalescent Servs. v. Idaho Dep't of Health*, 114 Idaho 281, 284, 756 P.2d 398, 401 (1988). This rule has been applied where a constitutional issue is raised for the first time on appeal. *Bogert v. Kinzer*, 93 Idaho 515, 517, 465 P.2d 639, 641 (1970). However, we note that on some occasions when the Court has applied this rule it has qualified the rule. In *Oregon Shortline R.R. v. City of Chubbuck*, 93 Idaho 815, 817, 474 P.2d 244, 246 (1970) (emphasis added) in ruling that the Court would not consider whether a statute violated the equal protection clause of the fourteenth amendment to the United States Constitution and article 1, sections 1 and 2 of the Idaho Constitution we said that "these issues were not raised by the pleadings *nor were they argued or decided* in the trial court and we will not now consider them for the first time on appeal." In at least one case this court has considered a constitutional issue that was not raised in the trial court, even though we acknowledged

that the issue was not properly before us. *State v. Goodmiller*, 86 Idaho 233, 242, 386 P.2d 365, 370 (1963). On occasion we have allowed an issue that was not formally raised below to be considered on appeal when the issue was implicitly before the lower tribunal, and was considered and passed on by that tribunal. *Manookian v. Blaine County*, 112 Idaho 697, 700, 735 P.2d 1008, 1011 (1987). Here, the constitutionality of the Act was argued in the trial court by Sun Valley, and the trial court, in essence, ruled that the Act is constitutional. The parties have fully briefed and argued the issue in this Court. Therefore, under these circumstances, we will consider whether the sections of the Act relied on by the trial court in its rulings are unconstitutional on the ground that they violate the equal protection clause of the Idaho Constitution and of the United States Constitution.

■ It is apparent from the decision of the trial court granting summary judgment that the trial court relied on I.C. §§ 6–1103(10), 6–1106 and 6–1107 in reaching its decision. As we have interpreted these sections of the Act, they do not grant "blanket immunity" to ski area operators for injuries to skiers. We have concluded above that an operator may be liable for negligence based on failing to follow the duties set forth in I.C. §§ 6–1103 and 6–1104 or for any failing to follow any duty that does not relate to eliminating, altering, controlling or lessening the inherent risks of skiing. While substantial limitations have been placed on the liability of ski area operators, the Act does impose liability for some acts.

Equal protection of the laws is guaranteed by article 1, section 2 of the Idaho Constitution and by the fourteenth amendment to the United States Constitution. This Court has recognized three possible standards of review that may be employed in an equal protection analysis. Where the classification is based on a "suspect" classification or involves a "fundamental right," we have employed the "strict scrutiny" test. Where " 'the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute,' " the "means-focus" test is applicable. In other cases, the "rational basis" test is employed. *Johnson v. Sunshine Mining Co.*, 106 Idaho 866, 869, 684 P.2d 268, 271 (1984) (quoting *Leliefeld v. Johnson*, 104 Idaho 357, 373, 659 P.2d 111, 127 (1983)).

In *Johnson* we addressed whether Idaho's recreational use statute violated the state and federal equal protection clauses. This statute exempts a landowner from a "duty of care to keep premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." I.C. § 36–1604(c) (Supp.1989). There, we held:

> The appropriate test to review a statute such as this is the rational basis test, which requires only that the statute "advances legitimate legislative goals in a rational fashion." *Leliefeld v. Johnson*, 104 Idaho at 374, 659 P.2d at 128. The encouragement of recreation enhances the physical well-being of Idaho's people, has a positive effect on Idaho's economy, and is a legitimate legislative goal.

106 Idaho at 869–70, 684 P.2d at 271–72.

In oral argument before this Court counsel for the Northcutts argued that a "fundamental right" is involved here because the Northcutts are entitled to "a speedy remedy ... for every injury of person" under article 1, section 18 of our constitution. However, that argument was laid to rest in *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976). There we held: "Nothing in Art. I, § 18 either explicitly or implicitly prohibits legislative modification of common law actions." 97 Idaho at 864, 555 P.2d at 404.

It is significant that when the legislature stated the legislative purpose of the Act, it included the statement that "the sport of skiing is practiced by a large number of citizens of this state and also attracts a large number of nonresidents, significantly contributing to the economy of Idaho."

I.C. § 6–1101. As in *Johnson,* we hold that this was a legitimate legislative goal and satisfies the rational basis test.

## V.

### CONCLUSION.

We affirm the summary judgment of the trial court and award costs to Sun Valley.

BAKES, C.J., concurs in all but Part II in which he specially concurs.

McDEVITT, J., concurs.

BAKES, Chief Justice, concurring specially as to Part II:

The duty allegedly violated by the Sun Valley Company was the duty imposed by I.C. § 6–1103(3), "[t]o mark conspicuously the top or entrance to each slope or trail or area, with an appropriate symbol for its relative degree of difficulty...." In this case there is no claim that the sign in question violated that duty in that it did not "mark conspicuously the top or entrance to [the] slope or trail or area, with an appropriate symbol for its relative degree of difficulty...." Had appellant Northcutt's injury been proximately caused by an inaccurate description of the relative degree of difficulty of the slope, or had the sign not been sufficiently "conspicuous" so that it could not reasonably have been observed, and as a result Northcutt descended a slope which exceeded his ability to negotiate, then in my view there would have been a violation of the duty provided in § 6–1103(3) for which liability would be imposed under I.C. § 6–1107, and which would not have been excused by I.C. § 6–1103(10).

However, that is not the claim being made. The allegation being made is that the sign was not safely located, or safely constructed of materials which would absorb an impact. However, I.C. § 6–1106 provides that "[e]ach skier expressly assumes the risk of and legal responsibility for any injury to person or property which results from participation in the sport of skiing including any injury caused by [impact with] ... rocks, trees, other forms of forest growth or debris, lift towers and components thereof, utility poles, and snowmaking and grooming equipment...." For those risks, and other risks "not limited to those described in section 6–1106," the exception contained in 6–1103(10) provides that the operator shall not have any duty to lessen such risks, and shall not be held to any standard of care if he attempts to lessen them.

On that basis, I specially concur with Part II of the Court's opinion.

McDEVITT, Justice, specially concurring.

With the broad Legislative purpose set forth in I.C. § 6–1101 and the extremely restrictive language of I.C. § 6–1107, that has led the majority to the conclusion that Sun Valley Company is not liable for the injuries sustained by the plaintiff in this action, I concur.

The injuries sustained here were severe. The lack of planning, foresight, minimum caution, or attempt to minimize possible injury exhibited by Sun Valley Company in the design, construction and placement of the signpost causing those injuries is apparent.

The continuation of the disregard of all these factors by ski operators could, in a future time, lead one to the conclusion that their acts were not "an attempt to eliminate, alter, control or lessen such risks."

BISTLINE, Justice, dissenting.

Justice Johnson opens his opinion by stating the three primary issues and the holdings which he would make if commanding a majority who adhere to his interpretation of *The Act* (I.C. §§ 6–1101 through 6–1109). Pairing the issues with the proposed holdings, I will point out my most cogent reasons for being unable to join the proposed opinion. Where appropriate I will rephrase the issues to better suit my understanding of the factual circumstances.

### PART I.

ISSUE NO. 1. Whether Sun Valley Company may be liable for personal inju-

ries to a skier who was run into by another skier and knocked into a Company sign standard with such force that he suffered serious permanent injury. The holding proposed for Issue No. 1:

1. Under the Act a ski area operator is not liable for the improper placement of a sign erected to eliminate, alter, control or lessen the inherent risks in skiing or for the improper design, construction or padding of a signpost that supported the sign.

Discussion: It should be enough that I fully agree with Justice McDevitt's view that, "The injuries sustained here were severe. The lack of planning, foresight, minimum caution, or attempt to minimize possible injury exhibited by Sun Valley Company in the design, construction and placement of the signpost causing those injuries is apparent." However, I deem it necessary to expand upon Justice McDevitt's views in order to fully express the sense of outrage which surfaces upon ascertaining the happening of an "accident" which was not accidental, considering the actions of the primary actor, "X" whose identity has been shielded by an employee of Sun Valley Company, and the severity of the injuries which appear to be 100 percent attributable to the solid and poorly padded sign standard which was unnecessarily positioned in a place of apparent peril to amateur skiers and almost deadly peril to an experienced skier who has the misfortune to be run into by a hot-dog skier run amuck.

Among the duties of operators enumerated in I.C. § 6–1103 is I.C. § 6–1103(3), to mark conspicuously, presumably by visible sign as stated in preceding duty number (2), the top or entrance to each slope or trail or area, with an appropriate symbol for the relative degree of difficulty. Idaho Code § 6–1107 makes the operator specifically liable for damages "caused by its failure to follow the duties set forth in § 6–1103 ... where the violation of duty is causally related to the loss or damage suffered."

It does not require years and years of experience in driving motor vehicles to understand that reasonable prudence has guided the location of standards supporting both illuminating lights and traffic lights; such standards simply are not placed smack-dab in the middle of well-travelled thoroughfares. Rather the placement is well off of such thoroughfares. By the use of arms as long as necessary the signs are seen hanging well out over the thoroughfares, and the standard supporting the signs or signals presents no hazard.

No reason has been made to appear why the signpost standard here involved was not set well back and away from the area which was open to skiers. It is necessarily to be inferred that the Company recognized the hazard, but, for whatever reasons, chose to pad the standard as against relocating it in the woods, or at least off a main intersection at the top of three different slopes available for the Company's paying customers.[1]

Although *I.C. § 6–1106—Duties of skiers*, purports to impose upon skiers an assumption of the risk of injury caused by, *inter alia*, lift towers and components thereof, utility poles, and snow-making and snow-grooming equipment, a utility pole is a utility pole, concerning which "The Act" places no duty on the skier, and so far as has been learned, there are no utility poles on the ski slopes, and perhaps none in the area.

In this case our concern is with a sign standard which any reasonably prudent operator would have located so that it created *no* hazard. As far as is known on a record which is sparse because the issues were "tried" below in summary judgment proceedings, as compared to a record which would be developed at a trial, an off-track sign standard would have incurred no great expense, and the presence of the one at issue was *not* a risk by the legislature declared to be inherent to the recreational sport of skiing. To that extent I am in agreement with Justice Boyle's view that the risks inherent in skiing would be those

---

1. An expert testified that break-away poles supporting the sign would also have been prefer-

able to the solid post which the Company utilized to support its sign in question.

exact same risks which a skier subjects himself to when he embarks on a ski venture onto the public domain or private lands "open" to recreational trespassing. Obviously skiers using Sun Valley Company's facility are paying for the luxury of riding to the top, of knowing that the entire area is being policed by ski patrols, and for the *quid pro quo* they have the Company's implied obligation, plus the statutory obligation, to not negligently cause injury to their patrons. Northcutt was injured while enjoying the Company's facility, and clearly he has a right to have a jury assess how much of his damages should be assessed to the Company, if it be that the standard supporting the trail marker sign was not prudently located and is so found by the jury. The holding which I propose:

1. Under the Act a ski area operator *may be* held liable for the dangerous placement of a sign standard which the operator was legislatively required to erect, a jury question, and here improperly resolved in summary judgment proceedings.

## PART II.

ISSUE NO. 2. Should a ski area operator have any liability by reason of its agent or employee releasing an unidentified skier who ran into a skier, Northcutt, knocking the latter with great force into a sign standard, by reason of which the innocent skier, Northcutt, suffered great injury?

DISCUSSION: First, it is important to keep in mind that the particular collision between the two skiers here involved, while it was a precipitating cause of Northcutt being knocked with great force into a sign standard which obviously should not have been there, was not by any person declared to be attributable to Northcutt. He was as much run into as the 60 or 80-year old lady walking across Fairview Avenue in Boise, or Blue Lakes Boulevard in Twin Falls, in the crosswalk, going with the light and doing nothing which partakes of negligence. On the record before us, the skier who bombed into Northcutt, known now only as "X," would be amenable to a negligence action against him with or without

the provisions of I.C. § 6–1106, which although captioned "Duties of skiers," is artfully worded so as to purport to wholly exonerate operators. It provides that "[t]he responsibility for collisions by any skier while actually skiing, with any person, shall be solely that of the individual or individuals involved in such collision and not that of the ski area operator." This sentence standing alone is open to serious challenge because of its location (like the sign standard) in the wrong place, but it is somewhat savingly modified by the provisions of I.C. § 6–1107 which do deal with the question of an operator's liability. One of the more understandable provisions of "the Act," it would deprive Northcutt of any claim against the operator if, and only if, Northcutt at the time of the collision was "acting in a manner which may cause or contribute to the injury of anyone." I.C. § 6–1106. As it appears in the record before us, Northcutt was an innocent victim when "X" ran into him, and was guilty of no violation within the contemplation of I.C. § 6–1107. Northcutt, in all probability, was desirous of naming "X" as a defendant in his action for the injuries and damages which he suffered. There is only one reason why he has not done so and cannot do so. That is because of the irresponsible behavior of a Company employee in releasing "X" without obtaining the personal identification of "X," to wit, name and address as required by I.C. § 6–1106. Compounding this clear violation of duty, the culprit, "X," when he first refused to identify himself, had been subjected to the equivalent of a citizen's arrest by an on-the-scene skier who told "X" that should he attempt to leave without furnishing personal identification he, "X," would be forcibly detained. "X" apparently respected the admonition, and did remain. The ski patrol arrived, was fully advised of the circumstances, and for unknown reasons directed the release of "X," who quickly left the scene of the accident, taking with him the secret of his identity. In that manner Northcutt was deprived of any opportunity to seek redress from "X." The holding which I propose:

2. An operator is liable for the negligent acts of his agents or employees. A ski patroller has an obligation to know the statutory responsibilities which "the Act" places on ski area operators, one of which is his employer, and, whatever may be the independent grounds of an operator's liability to an innocent skier, where the operator's employee has deprived an innocent skier of his chance to hail into court the culprit who ran into him, it is only just that the operator be made to bear the liability for damages which would have been assessed against "X," except for the ski patrol's violation of duty, whether it be a negligent or a wilful violation.

## PART III.

As to the constitutional question, I see no reason to address it because there clearly exists in Northcutt a right to have a jury determine the issues of the Company's liability, both as to the dangerous placement of the sign standard, and on application of the doctrine of *respondeat superior.*

## PART IV.

Despite Justice Johnson's assertion to the contrary, his is *not* "the only interpretation we can give to I.C. § 6–1103(10) that is consistent with the purpose of the Act and that gives meaning to all of the provisions of the Act." There is, in fact, an interpretation which is consistent with common sense, general rules of statutory construction, *and* legislative intent.

Idaho Code § 6–1103(10) reads:

**6–1103. Duties of ski area operators with respect to ski areas.**—Every ski area operator shall have the following duties with respect to their operation of a skiing area:

(10) Not to intentionally or negligently cause injury to any person; ...

An exception which should have been separately stated, and perhaps in a section of its own—is then tagged on to the duty clearly delineated in (10). It reads:

provided, that *except for the duties of the operator set forth in subsections (1)*

*through (9) of this section and in section 6–1104, Idaho Code,* the operator shall have no duty to eliminate, alter, control or lessen *the risks inherent* in the sport of skiing, *which risks* include but are not limited to those described in section 6–1106, Idaho Code; and, that no activities undertaken by the operator in an attempt to eliminate, alter, control or lessen *such risks,* shall be deemed to impose on the operator any duty to accomplish such activities to any standard of care.

I.C. § 6–1103(10) (emphasis added). Justice Johnson, according to my reading, interprets this section to say that while I.C. §§ 6–1103(1) through (9) do establish duties the operator of a ski area must fulfill, subsection (10) of I.C. § 6–1103 *relieves the operator of the obligation to perform those duties with any standard of care.* While the unfortunately poor drafting of the statute may have lead to this "tortured" interpretation, it is not even a plausible interpretation, much less the *only* interpretation. A far more rational interpretation would be as follows: The legislature set forth in subsections (1) through (9) certain duties which an operator must perform in order to provide skiers with a minimum level of safety which public policy demands. Those duties, as with any other legally imposed duty, must be performed in a non-negligent manner. I.C. § 6–1103(10). Then, in subsection (10), the legislature specified that, *except for* those nine previously enumerated duties, an operator does *not* have any duty to attempt to eliminate, lessen, etc., the inherent risks of skiing, *and,* if the operator *does* undertake to eliminate, lessen, etc., those risks in some way other than is enumerated in subsections (1) through (9), that *additional* remedial measure need not be undertaken with any standard of care.

This interpretation has numerous advantages that Justice Johnson's interpretation lacks. First, it more fully gives effect to the whole Act, by recognizing that the legislature "define[d] those areas of responsibility *and affirmative acts* for which ski area operators shall be liable for loss, damage, or injury," I.C. § 6–1101 (emphasis

added), in subsections (1) through (9) of I.C. § 6–1103 and in I.C. § 6–1104.

Second, the interpretation outlined above gives a meaning to the legislature's actions which is much more compatible with common sense than the interpretation put forward by Justice Johnson. The legislature clearly did not intend to give ski area operators free license to do whatever they choose on the slopes without any regard for the safety of skiers. Rather, the legislators were attempting to balance the interests of skiers in safe recreation with the inability of operators to eliminate all risks of skiing and still remain a profitable industry. Justice Johnson's interpretation of the Act essentially eliminates the skiers' half of that equation. The interpretation set forth in this opinion gives the legislature far more credit for having performed that balancing in an equitable manner.

Third, my interpretation of the statute is consistent with accepted principles of both statutory construction and tort law, while Justice Johnson's is not. When construing a statute, "[w]here there is an express exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied. An enumeration of exceptions from the operation of a statute indicates that [the statute] should apply to all cases not specifically enumerated [in the exception]." Sutherland, *Statutes and Statutory Construction* § 47.11, at 145 (1984). Thus, *only* those duties enumerated in subsections (1) through (9) of I.C. § 6–1103 and I.C. § 6–1104 are excepted from the *no standard of care provision of I.C. § 6–1103(10)*. Otherwise put, §§ (1) through (9) are the affirmative actions requirement in the statement of purpose. A statutory exception should not be read so that it excepts nothing from the operation of the statute. *Erspamer Adv. Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983). Yet Justice Johnson's opinion would read I.C. § 6–1103(10)'s exception in just that way, *i.e.*, that the "except for" clause of subsection (10) in actuality excepts nothing.

Ordinary principles of tort law also militate against Justice Johnson's approach to statutory interpretation.

'[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence causes, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy that duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other.

Keeton, *Prosser and Keeton on Torts* 356 (5th Ed.1984). This understanding of the inter-relationship of duty and standard of care is almost axiomatic. Justice Johnson's reading of I.C. § 6–1103(10) does great violence to this long-standing principle. The interpretation of I.C. § 6–1103(10) proffered herein preserves the principle, recognizing that the legislature specifically stated that if the operator has *no duty* to do an act, and if the operator nevertheless does choose to do that act, the doing so cannot be converted into a duty by attaching some standard of care to its performance.

The impact of these differing interpretations is dramatically illustrated by Christopher Northcutt's case. Northcutt was seriously injured when he collided with a sign standard which the operator of Sun Valley ski resort had posted on the slope. According to Justice Johnson, the operator had a duty to erect such a sign, but no standard of care attached to the manner in which the operator performed that duty. According to the theory advanced in this opinion, the operator had a duty to erect the sign supporting it with something, and locating it somewhere, and that duty is inseparable from the ordinary standard of care which attaches to any legal duty. It is up to a jury to determine whether the operator's conduct met that standard of care, and if it did not, whether that failure was a proximate cause of Northcutt's injuries.

BOYLE, Justice, dissenting.

I am unable to concur in Part II of the majority opinion and respectfully dissent. The language of I.C. § 6–1103(10) expressly relieves a ski operator from any duty to eliminate, alter or lessen the "risks inherent" in the sport of skiing. In my opinion, however, this limitation on a ski operator's liability relates only to injuries caused by snow, ice or weather conditions, collisions with lift towers, utility poles, snowmaking equipment, trees, rocks, debris or other objects under or protruding from the snow, variations in the terrain and other factors expressly specified in I.C. § 6–1106.

A ski operator is expressly required by the statute not to "negligently cause injury" to any person. I.C. § 6–1103(10). It is my opinion that the Act contemplates liability for negligence and does not give ski operators total immunity. Once a ski operator has undertaken the placement of markings or warning signs pursuant to the Act it must do so in a manner not to intentionally or negligently cause injury.

The record before us raises genuine issues of material fact as to the ski operator's possible negligence in the method and manner of placing the sign. Generally, questions of negligence and proximate cause are issues reserved for the trier of fact and in my opinion, summary judgment should not have been granted. I would reverse and allow the case to be presented to a jury to determine whether the ski operator was negligent in the placement of the sign.